**EL CENTRO DEL BARRIO, INC.,
Dr. Ernesto Gomez, and Jose
E. Camacho, Relators,**

v.

**The Honorable James E. BARLOW,
Respondent.**

No. 04–94–00354–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 1994.

Rehearing Denied Jan. 31, 1995.

Robert E. Bettac, Akin, Gump, Strauss, Hauer & Feld, San Antonio, Dewey Poteet, James W. Cannon, Jr., Elizabeth M. Galaway, Akin, Gump, Strauss, Hauer & Feld, Austin, for appellant.

Glen D. Mangum, Law Offices of Glen D. Mangum, San Antonio, for appellee.

Before CHAPA, C.J., and STONE and HARDBERGER, JJ.

## OPINION

STONE, Justice.

Relators, El Centro del Barrio, Inc. and Dr. Ernesto Gomez, are defendants in a wrongful discharge suit brought by Debbora Thompson and Concepcion C. "Mike" Oropeza. El Centro, a non-profit private health care corporation, fired Ms. Thompson (its comptroller) and Mr. Oropeza (its assistant comptroller). Plaintiffs sued El Centro for retaliatory dismissal under the Whistleblower's Act and retaliatory dismissal for opposing discriminatory practices, and sued both El Centro and Dr. Gomez (El Centro's executive director) for intentional infliction of emotional distress. Plaintiff Thompson also sued both defendants for defamation and tortious interference with a contract. Dr. Gomez filed a counter-claim against Ms.

Thompson in which he alleged that she defamed his reputation by publishing false statements that he had defrauded El Centro by diverting agency resources to his personal use.

Plaintiffs deposed Jose Camacho, the executive director and general counsel for the Texas Association of Community Health Centers. El Centro is a member of this association. Defendants objected to Mr. Camacho answering certain questions because they believed that his answers would violate the attorney-client privilege between El Centro/Dr. Gomez and Mr. Camacho as general counsel. Plaintiffs also sought to obtain production of documents showing Dr. Gomez's compensation and production of Dr. Gomez's income tax returns for the years 1989 through 1993. The trial court heard the arguments of the attorneys on the motion to compel, but no evidence was presented. By order of the trial court, El Centro and Dr. Gomez were compelled to answer questions relating to information given its general counsel and were ordered to produce documents reflecting Dr. Gomez's compensation and his personal income tax returns for the four-year period.

Subsequently, Dr. Gomez obtained summary judgment in his favor on all causes of action. El Centro obtained summary judgment in its favor on all causes of action except the whistleblower claim. Relators filed a motion for rehearing on the order compelling production of tax returns and records regarding Dr. Gomez's compensation because Dr. Gomez is no longer a party to the lawsuit. Respondent, Judge Barlow, denied the motion for rehearing, and ordered relator to produce the documents by June 29, 1994. Relators now petition this court to compel respondent to rescind its order compelling production. We note that Dr. Gomez's counter-claim has not been disposed of and is still a live pleading according to our mandamus record. We must decide whether relators were entitled to assert the attorney-client privilege, and whether Dr. Gomez's income tax returns and other documents are privileged.

A writ of mandamus will issue to correct a clear abuse of discretion by the trial court or to correct the violation of a duty imposed by law if no other remedy at law is available to the relator. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994); *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). A party has no adequate remedy by appeal when the appellate court would be unable to cure the error of the trial court in ordering discovery, such as when the party is erroneously ordered to disclose privileged information, *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 12 (Tex.1994); *Walker v. Packer,* 827 S.W.2d at 843, or when "a discovery order compels the production of patently irrelevant or duplicative documents, such that it clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." *Walker v. Packer,* 827 S.W.2d at 843. The trial court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). The trial court does not have discretion in determining what the law is or in applying the law to the given facts. *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d at 12; *Walker v. Packer,* 827 S.W.2d at 840. We may not substitute our opinion for that of the trial court regarding the resolution of factual issues. *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d at 12; *Walker v. Packer,* 827 S.W.2d at 840. The clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion for which mandamus will lie. *Walker v. Packer,* 827 S.W.2d at 840.

Relators argue that as general counsel for the Texas Association of Community Health Centers, Mr. Camacho is prevented from answering the following two questions, posed at his oral deposition, because the information is protected by the attorney-client privilege between him and El Centro. The two questions posed are:

Did Dr. Gomez relate to you the fact that Ms. Thompson [plaintiff] was alleging that he had abused or misused agency employees, facilities, equipment, et cetera?

and

When was the first time, Mr. Camacho, that you heard that Debbora Thompson was alleging that Dr. Ernesto Gomez had misused agency employees, facilities, and equipment?

The attorney-client privilege allows the client "to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer. . . ." TEX.R.CIV.EVID. 503(b). A client includes a corporation. *Id.* at 503(a)(1). Thus, El Centro, a non-profit private corporation, clearly qualifies as the client. A corporation must act through its representative. For purposes of claiming the attorney-client privilege, the corporation must establish that its representative falls within the standard of rule 503(a)(2), that is, that the representative "is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." *Id.* at 503(a)(2); *Cigna Corp. v. Spears,* 838 S.W.2d 561, 564 (Tex.App.—San Antonio 1992, orig. proceeding). The supreme court has interpreted this section as requiring the representative to be an employee who controls the actions of the corporation, that is, one who is a member of the control group. *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 197 (Tex.1993).

The client-corporation must also prove that the communication sought to be protected is a confidential communication made in order to obtain or render legal advice to the corporation. TEX.R.CIV.EVID. 503(b). A confidential communication is one "not intended to be disclosed to third persons other than to those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *Id.* at 503(a)(5).

The burden is on the party seeking to protect the communications to prove these elements of the privilege. There are

no presumptions of privilege or that the person receiving or seeking the advice is an authorized person under rule 503(a)(2). *Cigna Corp. v. Spears*, 838 S.W.2d at 565.

■ At the hearing on the motion to compel and the hearing to reconsider, neither party offered any evidence. No affidavits were tendered to establish the relationships or that the communications were intended to be confidential. The oral deposition of Mr. Camacho, however, presents some evidence which we shall review.

Mr. Camacho testified that he is the executive director, as well as the general counsel, for the Texas Association of Community Health Centers. He is retained by the association. El Centro, as a member of the association, is entitled to obtain Mr. Camacho's legal services. He provided advice to El Centro and Dr. Gomez on several different types of cases or on various questions. Mr. Camacho has an existing attorney-client relationship with Dr. Gomez, as executive director, in so far as Dr. Gomez sought advice for El Centro. Dr. Gomez sought his advice on various employment cases, including that concerning plaintiff Thompson. Mr. Camacho stated that Dr. Gomez "represents the agency."

Relators never elicited testimony specifically identifying Dr. Gomez as a person authorized to seek or act on legal advice on behalf of the corporation. They also did not elicit evidence identifying Dr. Gomez as a member of the higher echelon or control group. *See National Tank Co. v. Brotherton*, 851 S.W.2d at 197. He was clearly identified as the executive director of El Centro, but his duties and responsibilities were never mentioned. It is tempting to presume to know that an executive director is a member of the control group and thus authorized to seek or act on legal advice, but no presumptions are indulged when determining whether to restrict discovery based on the attorney-client privilege, *Cigna Corp. v. Spears*, 838 S.W.2d at 565, and such is not

a proper subject for judicial notice. While Dr. Gomez bears the title, Executive Director, there has been nothing to establish what authority El Centro considered that title to carry. Mr. Camacho's bare statement that Dr. Gomez represented El Centro does not establish that he was a member of the control group or authorized to seek or act on legal advice. There is no indication of what Dr. Gomez's representation encompassed. *See id.*

Further, relators have failed to meet their burden of establishing that the communication was intended to be confidential. The only testimony was that Dr. Gomez consulted Mr. Camacho with regard to various employment cases. There is no indication that the communications were intended by El Centro not to be communicated to third persons.

Relators failed to meet their burden of proof. In light of this deficiency, we cannot say that the trial court clearly abused its discretion in compelling Mr. Camacho to answer plaintiffs' two contested questions.[1]

■ Generally, income tax returns are subject to discovery to the extent that their relevancy and materiality to the issues in the lawsuit are shown. *Maresca v. Marks*, 362 S.W.2d 299, 300 (Tex.1962); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 440 (1959), *overruled on other grounds sub nom. Walker v. Packer*, 827 S.W.2d 833 (Tex.1992). The party resisting discovery has the burden to plead the specific privilege or exemption claimed and must produce evidence concerning the applicability of the particular privilege or exemption. *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985); *Chamberlain v. Cherry*, 818 S.W.2d 201, 204 (Tex.App.—Amarillo 1991, orig. proceeding). Relator filed an objection to production based on the lack of relevancy. It thus became plaintiffs' burden to show that the tax returns are relevant and material to issues in the case. *Maresca v. Marks*, 362 S.W.2d at 300; *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d at 440. The trial

1. Relators rely heavily on plaintiffs' failure to prove the crime-fraud exception of TEX.R.CIV. EVID. 503(d)(1). However, before an exception must be proved, the attorney-client relationship of TEX.R.CIV.EVID. 503(a)(2) must be proved. Because relators failed to establish the privilege, the crime-fraud exception is not applicable. The same applies to relator's arguments concerning conflict of interest and materiality.

court must also consider whether the discovery request invades personal or property rights. *Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex.1988). The supreme court has held that the protection of privacy is of constitutional importance. *Maresca v. Marks,* 362 S.W.2d at 301. As a result, a unanimous supreme court found the trial court abused its discretion by requiring disclosure of tax returns when the same information had been obtained from another source. *Sears, Roebuck & Co. v. Ramirez,* 824 S.W.2d 558, 559 (Tex.1992). The court stated, "Our opinion in this case is guided by our reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns." *Id.* In expressing their concern about the privacy interest a party has in his federal income tax returns, the supreme court wrote:

> Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. *But sacrifice of the latter should be kept to the minimum,* and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

*Maresca v. Marks,* 362 S.W.2d at 301 (emphasis added). In conformity with the supreme court's concern about privacy, the Amarillo Court of Appeals has held that the party seeking production of the tax returns must show that the information sought through the returns cannot be obtained from some other source. *Kern v. Gleason,* 840 S.W.2d 730, 738 (Tex.App.—Amarillo 1992, orig. proceeding); *Chamberlain v. Cherry,* 818 S.W.2d at 206. The court of appeals relied on the *Borenstein* case, which followed the same rationale of our supreme court in concluding that "[t]he interests of justice do not require production of tax returns in the face of a motion for protective order where other discovery methods are available to obtain the same information." *Borenstein v. Blumenfeld,* 151 Ga.App. 420, 260 S.E.2d 377, 378 (1979). Tax returns are not material if the same information can be obtained from another source. *Chamberlain v. Cherry,* 818 S.W.2d at 206; *see Sears, Roebuck & Co. v.*

*Ramirez,* 824 S.W.2d at 559 (when the same information was already obtained from another source, the trial court abused its discretion in compelling production).

■ While it is the duty of the trial court to segregate the relevant and material parts of the tax returns from the irrelevant and immaterial parts, *Maresca v. Marks,* 362 S.W.2d at 300; *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d at 440; *Chamberlain v. Cherry,* 818 S.W.2d at 205; *Wielgosz v. Millard,* 679 S.W.2d 163, 167 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding), it is not an abuse of discretion for the trial court to order production and refuse to hold an in camera inspection of the tax returns when the basis of the objection is that the returns are irrelevant to the issues in the case and production would be an invasion of the party's privacy rather than that production is exempted by a specific immunity, exemption, or privilege. *Hoffman v. Fifth Court of Appeals,* 756 S.W.2d 723, 723 (Tex.1988); *see* TEX.R.CIV.P. 166b(4).

■ Dr. Gomez objected to producing his tax returns because they are not relevant to the issues of the case, the request unnecessarily seeks to harass and invade his privacy, and it is cumulative of other discovery. The burden was on plaintiffs to show that the information contained in the tax returns was relevant and material to the issues in the case and to show that they were unable to obtain this information through other discovery methods or other sources. In their motion to compel production, plaintiffs alleged no facts to establish the relevancy and materiality of the returns. They merely concluded that, "The documents sought by Plaintiffs are relevant to the subject matter of this action, and the request is reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs' attorney argued to the trial court that the returns are relevant to show that Dr. Gomez received compensation from other sources while working for El Centro, "which would logically make it impracticable if not impossible for him to have been devoting his time 100 percent to performing services for El Centro...." It has never been disputed, however, that Dr. Go-

mez had more than one job and did not confine all of his efforts and time to El Centro. Because Dr. Gomez's tax returns would not establish how much time he spent on any one project, nor whether he worked on other projects on El Centro's time, they would not be relevant to any of the disputed issues in the case.

Plaintiffs also argue in their brief that by showing the extent that Dr. Gomez received income from other sources, the jury could infer that concealing such information was what motivated Dr. Gomez to fire the plaintiffs. Plaintiffs have made no attempt to show that they could not establish that Dr. Gomez was using El Centro's resources for his own use by deposing co-workers who saw him do this or who noticed that he was absent from work, or by deposing Dr. Gomez to find out who else he was working for, what hours he kept, and what compensation he was receiving from other employers, or by deposing Dr. Gomez's other employers to find out how much time he devoted to their purposes. It was plaintiffs' burden to establish relevancy and an inability to discover the information sought from other sources. Plaintiffs failed to present any evidence and wholly failed to meet their burden. The trial court therefore abused its discretion in ordering Dr. Gomez to produce his tax returns. *See TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d at 12 (trial court abuses discretion when misapplying law to facts).

■■■ The order compelling production also ordered El Centro to produce documents reflecting any compensation paid to or received by El Centro, Dr. Gomez, or any other employee or representative of El Centro by Our Lady of the Lake University.[2] Relators challenge the propriety of this order, in so far as it compels production concerning the compensation paid by Our Lady of the Lake University to Dr. Gomez, on the same grounds as for the production of the tax returns. However, the burden on the discovery of tax returns is somewhat differ-

ent than for financial records. The burden to establish relevancy and materiality of the tax returns falls on the party seeking to obtain production. *See Maresca v. Marks,* 362 S.W.2d at 300; *Crane v. Tunks,* 328 S.W.2d at 440. By contrast, the burden on the discovery of financial records lies with the party seeking to prevent production. *See Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d at 637 (general rule in financial records production case); *Kern v. Gleason,* 840 S.W.2d at 735–37 (applying general rule to production of financial records).

■■■ Discovery is available regarding any matter that is relevant to the subject matter of the suit. Tex.R.Civ.P. 166b(2)(a); *Lunsford v. Morris,* 746 S.W.2d at 471. Discovery may be limited by the legitimate concerns of the producing party of avoiding harassment, disclosure of privileged information, or overly broad requests. *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984), *overruled on other grounds sub nom. Walker v. Packer,* 827 S.W.2d 833 (Tex.1992). The trial court has great discretion in determining whether the discovery request involves unnecessary harassment or invasion of personal or property rights. *Lunsford v. Morris,* 746 S.W.2d at 473; *Kern v. Gleason,* 840 S.W.2d at 736.

■■■ Relators offered no evidence as to why the production of documents reflecting Dr. Gomez's compensation by Our Lady of the Lake University are privileged or exempted from discovery. Relators point to the pleadings to support their claim that the production of Dr. Gomez's financial records violates his right of privacy and that the records are immaterial and irrelevant.

Plaintiffs sued Dr. Gomez for intentional infliction of emotional distress and Ms. Thompson sued him for defamation and tortious interference with a contract. Punitive damages were sought. All of plaintiffs' claims against Dr. Gomez were disposed of

---

2. The order also compelled production of Dr. Gomez's personnel file at El Centro and contracts or documents concerning or relating to the provision of work or services or work done by El Centro, Dr. Gomez, or any other employee of El Centro for Our Lady of the Lake University.

Relators challenge the order in that it compels production of financial records. It appears they are challenging only request for production number 4—relating to compensation paid by Our Lady of the Lake University.

by summary judgment in favor of the doctor. Thus, punitive damages are no longer at issue for Dr. Gomez. Relators contend that the summary judgment disposing of plaintiffs' claims against Dr. Gomez render his financial records irrelevant to the causes in the suit. However, Dr. Gomez filed a counter-claim against plaintiffs in which he alleged that he was damaged by their defamatory conduct, and he sought to recover actual and exemplary damages. Although slander to a person's business or professional reputation is slander per se, and Dr. Gomez need not offer evidence of actual injury—injury to his reputation being presumed—*Gulf Constr. Co. v. Mott*, 442 S.W.2d 778, 783–84 (Tex.Civ. App.—Houston [14th Dist.] 1969, no writ); *West Texas Utils. Co. v. Wills*, 164 S.W.2d 405, 412 (Tex.Civ.App.—Austin 1942, no writ), an affirmative defense to a charge of defamation is that the statement is true. Tex.Civ.Prac. & Rem.Code Ann. § 73.005 (Vernon 1986); *Mitcham v. Board of Regents, Univ. of Texas Sys.*, 670 S.W.2d 371, 373 (Tex.App.—Texarkana 1984, no writ). Thus, Dr. Gomez's financial records are relevant to help Ms. Thompson establish that Dr. Gomez was working for other agencies while on El Centro's time.

The trial court's determination to allow discovery of the amount of compensation paid to Dr. Gomez by Our Lady of the Lake University is not a clear abuse of discretion.

The writ of mandamus is denied as to the trial court's order concerning the two questions propounded to Mr. Camacho because relators failed to establish the existence of the attorney-client privilege. The writ of mandamus is also denied as to the court's order enforcing request for production number four addressed to El Centro regarding documents reflecting the amount of compensation paid by Our Lady of the Lake University to Dr. Gomez. The writ of mandamus is granted, however, in so far as the trial court ordered production of the tax returns. The writ will not issue unless the trial court does not voluntarily withdraw that portion of his order. If he does not, the trial court will be ordered to vacate his order compelling production of Dr. Gomez's income tax returns

requested by request for production number five, addressed to Dr. Gomez.