

NUMBER 13-10-00277-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE: STANLEY J. WILLIAMS, JR. AND DENA WILLIAMS

### On Petition for Writ of Mandamus.

## O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Vela**
**Opinion by Chief Justice Valdez**

Relators, Stanley J. Williams Jr. ("Jay") and Dena Williams, seek a writ of mandamus directing the Honorable Jaime Palacios, Judge of the County Court at Law Number 2 of Hidalgo County, Texas, to vacate his orders: (1) overruling relators' objections to discovery requests propounded by real party in interest, G.J. Palmer Jr.; (2) denying relators' motion for reconsideration; and (3) requiring relators to answer Palmer's discovery requests by May 10, 2010. We conditionally grant the writ, in part, and deny the

writ in part.[1]

## I. BACKGROUND

The dispute in this matter pertains to a challenge filed by Palmer regarding the net worth of SJW Property Commerce, Inc. ("SJW") and Property Commerce Development Company ("PCDC"), companies in which Jay serves as president. On April 26, 2007, a jury concluded that SJW and PCDC had committed various business torts, including tortious interference with existing contracts, breach of fiduciary duty, and fraud, against Palmer involving the development of property for retail purposes at the northeast corner of 10th Street and Trenton in McAllen, Texas. *See SJW Prop. Commerce, Inc. v. Sw. Pinnacle Props., Inc.*, 314 S.W.3d 166, 173-79 (Tex. App.–Corpus Christi 2010, no pet.). The jury assessed actual and exemplary damages against SJW and PCDC exceeding $3 million, which included $709,587 in compensatory damages. *Id.* at 172. On February 7, 2008, the trial court entered its final judgment adopting the jury's findings. *Id.* at 182-83.

Shortly after judgment, SJW and PCDC filed affidavits of net worth and cash deposits to supersede the judgment. In particular, SJW deposited $10,000 into the trial court's registry, asserting that this amount was greater than or equal to fifty percent of SJW's net worth as of March 10, 2008. *See* TEX. R. APP. P. 24.2(a)(1). In support of its net worth assertion, SJW included audited financial statements and an affidavit executed by Larry Reader, a certified public accountant licensed in Texas, who averred that SJW's

---

[1] On May 10, 2010, movants, Jay and Dena Williams, as well as co-movants, SJW Property Commerce, Inc. and Property Commerce Development Company, Inc., filed a rule 24.4 motion in the cause number for the underlying causes of action, appellate cause number 13-08-00268-CV, asserting arguments that are virtually identical to those made in this mandamus. Because we address relators' complaints in this original proceeding, we DENY relators' rule 24.4 motion. *See In re Smith*, 192 S.W.3d 564, 567-68 (Tex. 2006) (orig. proceeding) (per curiam) (analyzing rule 24.4 motions challenging net worth affidavits and the sufficiency of cash deposits made in lieu of supersedeas bond as petitions for writ of mandamus); *see also Isern v. Ninth Court of Appeals*, 925 S.W.2d 604, 605-07 (Tex. 1996) (orig. proceeding) (reviewing by mandamus a trial court's order permitting the judgment debtor to post alternate security to supersede execution of the judgment).

net worth was $15,498. With respect to PCDC, Reader averred that PCDC's net worth was $2,878. In any event, PCDC deposited $5,000 into the trial court's registry.

On March 14, 2008, Palmer filed a contest pursuant to Texas Rule of Appellate Procedure 24.2(c)(2), challenging SJW and PCDC's affidavits of net worth. *See id.* at R. 24.2(c)(2). Palmer believed that the net worth of both SJW and PCDC was once much higher than described in the affidavits and that many of the assets previously owned by SJW and PCDC had been transferred to other entities to avoid paying the judgment. Subsequently, Palmer propounded discovery requests on various directors, officers, and employees of SJW and PCDC. On January 27, 2009, Palmer served Jay with post-judgment written discovery.[2] Jay objected to Palmer's discovery request and filed a motion for protection and a motion to strike. In this filing, Jay asserted that Palmer's discovery request invaded his "personal, constitutional, and property rights" and was, among other things, overly broad, harassing, and irrelevant, especially considering that Jay was not a named party to the underlying lawsuit.

In response to Jay's motions, Palmer filed a motion to compel and a motion for injunctive relief. In his motion to compel, Palmer contended that Jay failed to provide numerous categories of documents, including, among other things, "[t]he name and address of each business in which Jay Williams owns an interest that is involved in real estate development, leasing or sales"; "[a]ll schedules showing allocation of expenses from Property Commerce Management Company to SJW Property Commerce"; broker

---

[2] Within his discovery requests to Jay, Palmer requested the production of Jay's income tax returns as well as those of his wife, Dena. Palmer also requested "canceled checks, bank statements, check-stub records, and other banking records" pertaining to Jay and Dena and any interests that Jay and Dena may have in real or personal property. Based on the record before us, these appear to be the only references made to Dena. Dena was first named as a party to this matter in this petition for writ of mandamus. In any event, both parties focus their arguments in this matter on Jay's involvement rather than Dena's. And, none of Palmer's discovery requests specifically ask for information from Dena herself; instead, Palmer seeks information about assets in which Jay has an interest, including those held jointly by Jay and Dena.

compensation agreements with Clay Trozzo, Chad Moss, and Jay Williams, all brokers for SJW[3]; and "Property Commerce Management Company bank statements, income statements, balance sheets, cash flow statements, Articles of Incorporation, service agreements, corporate documents, tax returns, list of employees, contractors, brokers, agents and service providers, and a description of business activities 2003 to current."[4] In his motion for injunctive relief, Palmer alleged that, shortly after the jury rendered its verdict, SJW and PCDC, in May and June 2007, created several new sister corporations (Property Commerce JW, Inc.; Property Commerce CT, Inc.; Property Commerce Brokerage, Inc.; Property Commerce Leasing, Inc.; and Property Commerce Williams, Inc.) that operate under the trade name of "Property Commerce." Palmer further alleged that these new companies were created so that SJW and PCDC could transfer assets to avoid paying the February 7, 2008 final judgment. Palmer's allegation was premised on SJW and PCDC's representation that they were "very near bankruptcy" and their alleged refusal to provide accurate information regarding the financial health of the companies.

On July 22, 2009, the trial court conducted a hearing on Palmer's motions. After hearing arguments, the trial court granted Palmer's motion to compel and overruled Jay's objections to Palmer's discovery requests. Jay was ordered to produce "full and complete answers to [Palmer's discovery] requests without objection and shall produce all documents requested within twenty . . . days" of October 30, 2009, the date the trial court

---

[3] As noted in a previous opinion related to this matter, Trozzo and Jay are brothers-in-law and work very closely together in the business of real estate development. *See SJW Prop. Commerce, Inc. v. Sw. Pinnacle Props., Inc.*, 314 S.W.3d 172, 173 (Tex. App.–Corpus Christi 2010, no pet.). Trozzo, in particular, worked as a broker for SJW in the underlying matter involving the development of real estate at the intersection of 10th Street and Trenton in McAllen. *Id.* at 173-79. Jay, on the other hand, "owns and controls SJW and PCDC." *Id.* at 173 n.1.

[4] Although this matter involves numerous companies, it appears from the record before us that Property Commerce Management Company is a company related to SJW and PCDC.

4

signed the order. The trial court also ordered Jay to produce bank statements for an "S. Jay Williams Investments" account and overruled Jay's objections to Palmer's first set of post-judgment interrogatories.

In response to the trial court's October 30, 2009 order, SJW and PCDC filed a motion for reconsideration arguing, among other things, that: (1) Palmer's net worth discovery was premature and improper because there had not been an alter ego finding in the matter; (2) there was no evidence that Jay is the alter ego of SJW or PCDC; (3) more than 6,000 pages of documents had already been produced, which accurately demonstrated the cash flows between SJW, PCDC, and other companies; and (4) the order was unreasonable because it would take more than twenty days to produce the documents requested by Palmer.

The trial court conducted a hearing on SJW and PCDC's motion for reconsideration. On April 26, 2010, the trial court signed an order denying SJW and PCDC's motion for reconsideration and ordering SJW and PCDC to comply with the October 30, 2009 order by May 10, 2010.

On May 10, 2010, Jay and Dena Williams filed a petition for writ of mandamus accompanied by an emergency motion requesting that this Court stay the trial court's October 30, 2009 and April 26, 2010 orders. We granted the Williamses' emergency motion and stayed the enforcement of the trial court's orders. We also requested that Palmer file a response to the Williamses' petition. Palmer filed a response to the Williamses' petition, and the Williamses filed a reply to Palmer's response.

## II. STANDARD OF REVIEW

Mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d

619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).  In order to obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding).  A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law.  *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  To satisfy the clear abuse of discretion standard, the relator must show that the trial court could "'reasonably have reached only one decision.'" *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting *Walker*, 827 S.W.2d at 840).

Historically, mandamus was treated as an extraordinary writ that would issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies."  *Walker*, 827 S.W.2d at 840.  Now, however, in some extraordinary circumstances, whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review.  *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 462.  "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.  The supreme court further stated that:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money

6

utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id*.

### III. APPLICABLE LAW

**A.     Texas Rule of Appellate Procedure 24**

Pursuant to rule 24.1 of the rules of appellate procedure, a judgment debtor may supersede a judgment or, in other words, suspend enforcement of a judgment by (1) filing with the trial court clerk a written agreement with the judgment creditor for suspending enforcement of the judgment; (2) filing with the trial court clerk a good and sufficient bond; (3) making a deposit with the trial court clerk in lieu of a bond; or (4) providing alternate security ordered by the trial court. *See* TEX. R. APP. P. 24.1; *see also Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 305 (Tex. App.–El Paso 2009, no pet.). When the judgment is for money, as is the case here, the amount of the bond, deposit or security must equal the sum of the compensatory damages awarded in the judgment, interest for the estimate duration of the appeal, and costs awarded in the judgment. TEX. R. APP. P. 24.2(a)(1); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (Vernon 2008). However, the amount must not exceed the lesser of fifty percent of the judgment debtor's current net worth or twenty-five million dollars. *See* TEX. R. APP. P. 24.1(a)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b); *see also Clayton*, 293 S.W.3d at 305.

Texas Rule of Appellate Procedure 24.2(c) sets forth the procedure for determining a party's net worth. TEX. R. APP. P. 24.2(c). A judgment debtor who provides a bond, deposit, or security under rule 24.2(a)(1)(A) in an amount based on the debtor's net worth must simultaneously file an affidavit that states the debtor's net worth and states complete, detailed information concerning the debtor's assets and liabilities from which net worth can

7

be ascertained. TEX. R. APP. P. 24.2(c)(1); *see Clayton*, 293 S.W.3d at 305. The affidavit is prima facie evidence of the judgment debtor's net worth. TEX. R. APP. P. 24.2(c)(1).

A judgment creditor may file a contest to the judgment debtor's affidavit of net worth. *Id.* at R. 24.2(c)(2). Net worth is calculated as the difference between the party's total assets and total liabilities, as determined by generally accepted accounting principles ("GAAP").[5] *Clayton*, 293 S.W.3d at 305 (citing *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.–Dallas 2006, no pet.); *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 915 (Tex. App.–Houston [14th Dist.] 2005, no pet.)). "When a judgment creditor files a contest to the judgment debtor's affidavit of net worth, the trial court must hold a hearing." *In re Smith*, 192 S.W.3d 564, 568 (Tex. 2006) (orig. proceeding) (per curiam). At the hearing on the judgment creditor's contest, the judgment debtor has the burden of proving net worth. TEX. R. APP. P. 24.2(c)(3); *see Clayton*, 293 S.W.3d at 305. The trial court is required to issue an order that states the debtor's net worth and states with particularity the factual basis for that determination. TEX. R. APP. P. 24.2(c)(3); *see In re Smith*, 192 S.W.3d at 568; *Clayton*, 293 S.W.3d at 305. The trial court is also authorized to enjoin the judgment debtor from "dissipating or transferring assets to avoid satisfaction of the judgment." *Clayton*, 293 S.W.3d at 305 (citing TEX. R. APP. P. 24.2(d)). On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of security. *Id.* (citing TEX. R. APP. P. 24.4(a); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(d); *G.M. Houser Inc.*, 204 S.W.3d at 840). Here, the dispute pertains to discovery regarding Palmer's challenges to SJW and PCDC's net worth

---

[5] The Houston Court of Appeals further clarified, in *Enviropower LLC v. Bear, Stearns & Co., Inc.*, that "the correct measure of a company's net worth for the purpose of setting a supersedeas bond under section 52.006 of the Texas Civil Practice and Remedies Code and Rule 24 of the Texas Rules of Appellate Procedure is the company's current assets minus current liabilities at the time the bond is set." 265 S.W.3d 1, 5 (Tex. App.–Houston [1st Dist.] 2008, pet. denied).

affidavits and the sufficiency of SJW and PCDC's cash deposits in lieu of supersedeas bond.

## B.     Discovery

Ordinarily, the scope of discovery is within the discretion of the trial court. *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam). A trial court's ruling that requires production of information beyond what our procedural rules permit is an abuse of discretion. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam) (citing *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam)); *see Hall*, 909 S.W.2d at 492 (providing that the scope of discovery is largely within the discretion of the trial court); *see also In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 711 (Tex. App.–Houston [1st Dist.] 2008, orig. proceeding) (citing *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam)). If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist. *In re Dana Corp.*, 138 S.W.3d at 301 (citing *Texaco*, 898 S.W.2d at 815; *Walker*, 827 S.W.2d at 839). Thus, "[m]andamus review is proper for discovery that is 'well outside the proper bounds.'" *In re Brewer Leasing, Inc.*, 255 S.W.3d at 711 (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam)).

Discovery is generally permitted of any unprivileged information relevant to the subject of a lawsuit, whether it relates to a claim or defense of the parties. *See* TEX. R. CIV. P. 192.3(a); *see also In re Am. Optical Corp.*, 988 S.W.2d at 713 (providing that although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution and may not be used as a fishing expedition). As long as the information sought appears reasonably calculated to lead to

the discovery of admissible evidence, it is not a ground for objection that the information sought will be inadmissible at trial. *See* TEX. R. CIV. P. 192.3(a) (providing that the ambit of discovery is broad and permits parties to seek discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action"), (b) ("A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents . . . that constitute or contain matters relevant to the subject matter of the action."); *see also In re Spence*, No. 2-09-392-CV, 2010 Tex. App. LEXIS 4884, at *6 (Tex. App.–Fort Worth June 21, 2010, orig. proceeding) ("The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence."). Information is relevant if it tends to make the existence of fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401; *see In re Brewer Leasing, Inc.*, 255 S.W.3d at 712.

When a judgment debtor is uncooperative with reasonable discovery concerning the judgment debtor's net worth, the trial court may take appropriate steps, such as compelling responses and issuing sanctions, to ensure that discovery is completed before the hearing on the judgment creditor's contest. *In re Smith*, 192 S.W.3d at 579 (citing *Arndt v. Farris*, 633 S.W.2d 497, 499-500 (Tex. 1982)).

## IV. PALMER'S DISCOVERY REQUESTS AND JAY'S RESPONSES

In their petition for writ of mandamus, the Williamses argue that Palmer is not entitled to such information because Palmer has not secured an alter ego finding; Palmer has not complied with Texas Rule of Civil Procedure 205; and Palmer's discovery requests are "overly broad" and irrelevant. Specifically, they argue that their personal financial

documents are not discoverable because:  (1) Jay's status as president of SJW does not, by itself, make him a party to the litigation and that compliance with the discovery rules regarding non-parties is mandatory, *see* TEX. R. CIV. P. 205.1[6]; (2) the trial court abused its discretion by failing to limit Palmer's discovery to only that which is reasonable and relevant to the issues in this case; and (3) the trial court abused its discretion by ordering the production of an enormous amount of information within twenty days.  Palmer responds by arguing that the trial court's order is correct because:  (1) the evidence indicates that Jay "is part of a scheme to avoid bonding and paying the judgment"; (2) Palmer was not required to prove alter ego before securing discovery; (3) Jay is subject to SJW and PCDC's control, and therefore, Palmer complied with rule 205.1, *see id.*; (4) the information requested is relevant and not overly broad; and (5) Jay has had sufficient time to produce the requested information, especially given that production was first ordered in October 2009.

### 1.     Alter Ego and Control

We first address Jay's contentions involving the absence of an alter ego finding in the record and rule 205.1 of the rules of civil procedure.  In overruling Jay's objections to Palmer's discovery requests and granting Palmer's motion to compel, the trial court did not issue any findings of fact or conclusions of law to support its rulings.  In reviewing a trial court's decision where no findings of fact or conclusions of law are filed or requested, we will imply all necessary findings of fact to support the trial court's decision.  *See Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *see also Gonzalez v. Villarreal*, 251

---

[6] Texas Rule of Civil Procedure 205.1 provides that "[a] party may compel discovery from a nonparty—that is, *a person who is not a party or subject to a party's control*—only by obtaining a court order . . . or by serving a subpoena . . . a request for production of documents and tangible things under this rule." TEX. R. CIV. P. 205.1 (emphasis added).

11

S.W.3d 763, 775 (Tex. App.–Corpus Christi 2008, pet. dism'd w.o.j.) (citing *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 834 (Tex. App.–Corpus Christi 2007, pet. denied)). The trial court's decision must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see Doe v. Tarrant County Dist. Attorney's Office*, 269 S.W.3d 147, 152 (Tex. App.–Fort Worth 2008, no pet.).

As noted earlier, the trial court granted Palmer's motion to compel the Williamses to provide the financial information requested in Palmer's requests for production and accompanying interrogatories and overruled Jay's objections to Palmer's discovery requests. To the extent that the supreme court in *In re Smith* suggested that an alter ego and/or control finding is necessary to compel discovery from a non-party not subject to Texas Rule of Civil Procedure 205.1, we conclude that the trial court implicitly determined that Jay, as president of SJW, was either under the control of SJW, a named party in the underlying lawsuit, or it implicitly found that Jay was an alter ego of SJW.[7] The record in the underlying case is replete with evidence that Jay is the president of SJW; that he participates heavily in the management of SJW; and that he was a key player in the underlying case where the jury concluded that SJW committed fraud, breach of fiduciary duty, and other business torts against Palmer.[8] Because there is evidence in the record

---

[7] At the July 22, 2009 hearing, counsel for Palmer admitted that "you [the trial court], at some point, are going to have to decide whether or not—whether or not this—Jay Williams, Jr. is the alter ego of these companies. . . . But again, this issue is, is Jay Williams, Jr. the alter ego. I have to—we have to prove this to you."

[8] The Texas Supreme Court has stated that "'[a]lter ego applies when there is such unity between [the] corporation and the individual that the separateness of the corporation has ceased . . .' [;] an alter ego finding is relevant to the determination of the judgment debtor's worth." *In re Smith*, 192 S.W.3d at 568 (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). The *Castleberry* court noted that:

[A]lter ego is only one of the bases for disregarding the corporation fiction: where a corporation is organized and operated as a mere tool or business conduit of another corporation.

Alter ego applies when there is such unity between the corporation and the individual

12

that Jay was subject to the control of SJW and PCDC, rule 205.1 is not applicable. *See* TEX. R. CIV. P. 205.1. We find evidence in the record to support the trial court's implicit control and/or alter ego findings.[9] To hold otherwise would be to abrogate the governing standard that the trial court's decision must be affirmed if it could be upheld under any legal theory finding support in the record. *See Worford*, 801 S.W.2d at 109; *see also Doe*, 269 S.W.3d at 152.

> Nevertheless, the Texas courts have held that:

> Texas law does not require that a prima facie showing be made before a trial court can exercise its discretion to order the production of documents relevant to a damage claim asserted by the plaintiff in a plaintiff's pleadings. With respect to the discovery on net worth, our Supreme Court held in *Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex. 1988) that:

>> "Our rules of civil procedure and evidence do not require similar practices [i.e., that a prima facie right to punitive damages be established or delaying the production until the jury hears evidence sufficient to submit a punitive damage issue] before net worth may be discovered. Absent a privilege or specifically enumerated exemption, our rules permit discovery of any 'relevant' matter; thus there is no evidentiary threshold a litigant must cross before seeking discovery."

*In re Garth*, 214 S.W.3d 190, 194 (Tex. App.–Beaumont 2007, orig. proceeding) (quoting *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988); *see In re House of Yahweh*, 266

---

that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. Alter ego's rationale is: if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect the individual and corporate creditors.

721 S.W.2d at 272 (internal citations omitted).

[9] We note that the Texas Supreme Court has explicitly stated that the trial court's implicit control and/or alter ego finding "may not be used to enforce the judgment against the unnamed [party] or any other nonjudgment debtor, but only to determine the judgment debtor's net worth for purposes of Rule 24." *In re Smith*, 192 S.W.3d at 568-69. Thus, the trial court's implicit control and/or alter ego finding may not be used by Palmer to collect on the judgment from the Williamses personally absent any other findings. *See id.*

S.W.3d 668, 673 (Tex. App.–Eastland 2008, orig. proceeding); *In re W. Star Trucks US, Inc.*, 112 S.W.3d 756, 763 (Tex. App.–Eastland 2003, orig. proceeding); *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 131 (Tex. App.–Houston [1st Dist] 1990, orig. proceeding). While the case law in this area is sparse and not entirely clear, it may be that Palmer was not required to prove that Jay was under the control or was the alter ego of SJW and PCDC so long as the evidence Palmer requested is relevant and necessary to the matters in this case. Regardless, under either analysis, we must analyze the propriety of the trial court's orders compelling Jay to comply with Palmer's discovery requests.

**2.      Palmer's Discovery Requests**

The record reflects that Palmer served his first set of post-judgment requests for production on Jay, which contained thirteen requests for information. Jay responded to Palmer's production requests on February 25, 2009, asserting numerous objections to each and every production request made by Palmer. Palmer's production requests are as follows:

- In his first request for production, Palmer requested that Jay and Dena provide "[c]opies of your income tax returns, with all attachments, and those of your spouse for the last five years";

- In his second request for production, Palmer sought "canceled checks, bank statements, check-stub records, and other banking records pertaining to [Jay's] financial affairs and those of [Dena's] for any account on which you have signatory authority within the past four years";

- Palmer's third request for production sought "[c]opies of all books, record[s], and financial statements kept or issued by [Jay] for the last four years";

- In his fourth production request, Palmer requested that Jay produce all records pertaining to any ownership interest Jay or Dena had in real or personal property for the past four years;

- The fifth production request asked Jay to produce all documents referencing any income received by Jay for the last four years;

14

- The sixth production request asked Jay for the names and addresses of all persons or entities to which SJW has given a financial statement in the last five years;

- The seventh production request sought any documentation that Jay may have regarding the sale, purchase, or conveyance of any real or personal property made by Jay within the last five years;

- In his eighth production request, Palmer sought all documents that reference "any and all cash in any account owned or claimed by [Jay] held or deposited with any bank or other financial institution";

- By his ninth production request, Palmer asked for all documents referencing any "assets held in trust, in an estate, or in any other name or capacity in which [Jay] may claim or have an interest";

- The tenth production request sought all documents referencing any other assets that Jay has or had an interest in the last five years;

- In his eleventh production request, Palmer requested that Jay produce all documents pertaining to any liabilities that Jay may have that has not already been disclosed;

- The twelfth production request pertained to "[a]ll documents that evidence safe-deposit boxes, lock boxes, and storage facilities of any kind to which SJW Property Commerce, Inc. has access"; and

- The final production request asked Jay to produce any documents to which Jay referred in his answers to Palmer's interrogatories.

To each of Palmer's requests for production, Jay objected to the requests as overly broad, burdensome, harassing, an inappropriate request served upon a non-party to the lawsuit, and an unconstitutional invasion of his privacy.

In addition to his thirteen requests for production, Palmer also tendered nineteen interrogatories, to which Jay lodged identical objections as made to each of Palmer's production requests. The interrogatories inquire about the following:

- Jay's net worth and an inventory of every asset and liability included in the net worth calculation;

- Any ownership or leasehold interest Jay has in any real property;

- Information about any liens, mortgages, or any other encumbrances on real

15

property owned by Jay;

- The date of purchase, purchase price, and amount of equity in any homes owned by Jay;

- Information about any vehicles owned by Jay;

- Specific information, including present balance and authorized signatures, on any checking and savings accounts that Jay maintains;

- Information about "any stocks, bonds, or other securities of any class in any government, governmental agency, company, firm[,] or corporation";

- Any claims for money against others, including judgments, personal loans, or other notes;

- The location of any safe-deposit boxes or other depositories for securities, cash, and other valuables;

- Information about conveyances of land or assets by sale, gift, or otherwise to others within the past three years;

- Any ownership interests Jay may have in any businesses;

- Information about accounts receivables for the past two years in which Jay may have an interest;

- Information about any transactions Jay may have had with Dena or other family members involving "a transfer, conveyance, assignment, or other disposition of any . . . real or personal property in the past five years";

- Any debts that Jay may have;

- Any payments made to creditors within the past two years;

- Any interest that Jay may have in pension plans, retirement fund, or profit-sharing plans; and

- Information about the source of the income listed on Jay's IRS tax returns and other information pertaining to the tax returns;

3. **Income Tax Returns**

The thrust of Palmer's discovery requests is to ascertain the net worth of SJW and

PCDC for the years immediately preceding the trial court's February 7, 2008 final judgment

16

until now by tracing the alleged transfer of assets by Jay to other companies and to his personal accounts. In ascertaining net worth, Palmer seeks information regarding the assets and interests held by Jay in real and personal property and other financial records created or held by Jay. We must determine whether the information sought by Palmer is relevant and material to the determination of SJW and PCDC's net worth. Among the information requested by Palmer of the Williamses is income tax returns filed by Jay and Dena for the past five years. With respect to federal income tax returns, the Texas Supreme Court has long cautioned that:

> Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between the litigants outweighs protection of their privacy. But sacrifices of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

*Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding); *see Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995) (orig. proceeding) (per curiam) (concluding that income tax returns are discoverable to the extent that they are relevant and material to issues presented in the lawsuit); *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1991) (orig. proceeding) (per curiam) (concluding that the issuance of mandamus was "guided by our reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns"); *In re Garth*, 214 S.W.3d at 193 ("Because tax returns do not necessarily show an individual's net worth, a tax return is not automatically discoverable.") (citing *Chamberlain v. Cherry*, 818 S.W.2d 201, 205-06 (Tex. App.–Amarillo 1991, orig. proceeding) (stating that income tax returns are not necessarily indicative of net worth because they only show income for each year for which the returns are filed)).

Once an objection to the production of federal income tax returns is asserted, unlike

17

the production of other financial records, the party seeking discovery of the tax returns bears the burden of demonstrating relevance *and* materiality. *See El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex. App.–San Antonio 1994, orig. proceeding) (citing *Maresca*, 362 S.W.2d at 300).

Federal income tax returns are not material if the same information can be obtained from another source. *See id.* at 780; *see also Cherry*, 818 S.W.2d at 206 ("[W]hen financial statements accurately revealing a defendant's net worth are available, income tax returns are simply not relevant."). This limitation requires the requesting party to show that the relevant information sought through the returns cannot be obtained from another source. *See El Centro del Barrio*, 894 S.W.2d at 780 (citing *Kern*, 840 S.W.2d at 738).

Based on our review of the record, we cannot say that Palmer has met his burden of proving that the Williamses income tax returns are relevant and material to the determination of SJW's net worth. *See Maresca*, 362 S.W.2d at 300; *see also El Centro del Barrio, Inc.*, 894 S.W.2d at 779; *Cherry*, 818 S.W.2d at 206. As noted above, an income tax return reflects that amount of income received by a party during the given tax year. *See In re Garth*, 214 S.W.3d at 193; *Cherry*, 818 S.W.2d at 205-06. It appears that such information can be obtained from other sources requested by Palmer, including his requests for Jay's "books, record[s], and financial statements" for the past four years and "[a]ll documents that constitute or refer in any way to any income received by you for the last four years." *See El Centro del Barrio*, 894 S.W.2d at 780; *see also Cherry*, 818 S.W.2d at 206. Because evidence of Jay's income received for the last several years can be obtained from other sources, we conclude that Palmer has not proven himself entitled to production of the Williamses personal income tax returns. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 331 (Tex. 1993) (Gonzalez, J., concurring) ("[T]rial courts

18

should not allow discovery of private financial records, such as tax returns, when there are other adequate methods to ascertain net worth, such as audited financial reports or W-2 statements."); *Ramirez*, 824 S.W.2d at 559; *see also El Centro del Barrio*, 894 S.W.2d at 780; *Cherry*, 818 S.W.2d at 206. As such, the trial court abused its discretion in ordering the Williamses to produce these documents.[10] *See In re Dana Corp.*, 138 S.W.3d at 301; *In re Am. Optical Corp.*, 988 S.W.2d at 713; *see also In re Brewer Leasing, Inc.*, 255 S.W.3d at 711.

### 4. Other Financial Records

While we have concluded that the trial court abused its discretion in ordering the Williamses to produce their personal income tax returns to Palmer, we hold that the trial court did not abuse its discretion in requiring the Williamses to produce other records and documentation of their personal finances in ascertaining the net worth of SJW and PCDC. The general rule in financial records production cases is that the burden on the discovery of financial records lies with the party seeking to prevent production. *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding); *see Kern v. Gleason*, 840 S.W.2d 730, 735-37 (Tex. App.–Amarillo 1992, orig. proceeding) (applying the general to production of financial records). Further, we must keep in mind that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding).

The Texas Supreme Court has held that "in cases in which punitive or exemplary

---

[10] We are mindful that our opinion is based solely on the record before us, and we express no opinion regarding whether, after additional discovery, the tax returns could be shown to be material. *See Kern v. Gleason*, 840 S.W.2d 730, 735 (Tex. App.–Amarillo 1992, no writ) (noting that if an alternate source of information proves to be incomplete, a renewed request for income tax returns could be made); *see also In re Brewing Leasing, Inc.*, 255 S.W.3d 708, 716 n.3 (Tex. App.–Houston [1st Dist.] 2008, orig. proceeding).

damages may be awarded, parties may discover and offer evidence of a defendant's net worth." *Lunsford*, 746 S.W.2d at 473; *see In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App.–Houston [14th Dist.] 2009, orig. proceeding) ("A defendant's net worth is relevant in a suit involving exemplary damages."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (Vernon Supp. 2009) (authorizing exemplary damage awards in various causes of action, including fraud). Here, the jury awarded Palmer with more than $2 million in punitive damages against SJW. In our previous opinion, we concluded that such damages were recoverable based on the causes of action brought by Palmer, and we held that the jury's punitive damages awarded was supported by legally and factually sufficient evidence. *See SJW Prop. Commerce, Inc.*, 314 S.W.3d at 198-99; *see also In re Garth*, 214 S.W.3d at 194. Moreover, in this dispute, Palmer alleges that Jay and SJW have transferred money and assets out of SJW in order to reduce the net worth of the company to essentially make SJW judgment-proof. Based on these circumstances, we conclude that, with the exception of the Williamses personal income tax returns, the financial information that Palmer seeks to obtain through post-judgment discovery is highly relevant and material to determining the net worth of SJW, especially considering: (1) that the jury concluded that SJW committed fraud, breach of fiduciary duty, and other business torts against Palmer; (2) that the trial court, in arriving at its orders in this case, implicitly concluded that Jay was under the control of SJW or was an alter ego of SJW; and (3) the substance of Palmer's allegations in this dispute.

5.     **The Relevancy and Breadth of Palmer's Discovery Requests**

In any event, the Williamses argue that their personal financial information is not relevant to the calculation of SJW and PCDC's net worth. Further, the Williamses assert that Palmer's discovery requests are overly broad in that they are "unlimited in time or go

20

back four to five years," which no longer reflects Jay's current net worth. However, we are not persuaded by the Williamses' relevancy and broadness arguments because Palmer alleges that Jay has systematically moved money and assets from SJW and PCDC to other shell corporations and to other individuals as commissions from the date that the original petition in the underlying case was filed—December 2, 2003—to the present. *See SJW Prop. Commerce, Inc.*, 314 S.W.3d at 179. Thus, the scope of Palmer's discovery requests needed to be broad so as to trace the purported moving of assets and money that allegedly occurred over the course of several years by representatives by SJW and PCDC in preparation for a possible negative jury verdict in the underlying case.

The Williamses also appear to complain about language included by Palmer in his discovery requests that he sought to discover "all" financial records in the care, custody, or control of Jay. The Williamses argue that Palmer's usage of the term "all" renders his requests overly broad. We disagree.

The supreme court has recently noted that "[d]iscovery is a tool to make the trial process more focused, not a weapon to make it more expensive. Thus[,] trial courts 'must make an effort to impose reasonable discovery limits." *In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 668 (Tex. 2007) (per curiam) (quoting *In re CSX Corp.*, 124 S.W.3d at 152). Further, "an order that compels overly broad discovery well outside the bounds of proper discovery is an abuse of discretion for which mandamus is the proper remedy." *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (per curiam). "A central consideration in determining overbreadth is whether the [discovery] request could have been more narrowly tailored to avoid including tenuous information . . . ." *In re CSX Corp.*, 124 S.W.3d at 153. Comment 1 to Texas Rule of Civil Procedure 192 states that "[w]hile the scope of discovery is quite broad, it is nevertheless confined by the subject matter of

21

the case and reasonable expectations of obtaining information that will aid resolution of the dispute." Tᴇx. R. Cɪᴠ. P. 192 cmt. 1. In addition, the Texas Supreme Court has repeatedly admonished that discovery may not be used as a fishing expedition. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding) (per curiam); *Hall*, 909 S.W.2d at 492; *Texaco, Inc.*, 898 S.W.2d at 815. Requests that are overly broad encompass time periods or activities beyond those at issue in the case or, in other words, matters of questionable relevance. *See In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding); *see also In re Jacobs*, 300 S.W.3d at 44. Nevertheless, the scope of discovery is a matter of trial-court decision. *In re CSX Corp.*, 124 S.W.3d at 152.

The mere existence of the language "any and all" does not violate the specificity requirements of discovery as long as the request is further restricted to a particular type or class of documents. *See Chamberlain v. Cherry*, 818 S.W.2d 201, 204 (Tex. App.–Amarillo 1991, orig. proceeding). Here, Palmer does use the term "all" frequently in his discovery requests. For example, Palmer requested "[a]ll canceled checks, bank statements, check-stub records, and other banking records pertaining to [Jay's] financial affairs and those of [Dena's] for any account on which [Jay has] signatory authority within the past four years." While the use of the term "all" in this request appears to be quite broad, the request is restricted to a class of documents and is further restricted by a date. Each of the discovery requests in which Palmer utilizes the term "all" is restricted by a date or a class or type of documents. Thus, we conclude that Palmer's discovery requests are not overly broad and are relevant to the trace the purported transferring of money and assets to deflate the net worth of SJW and PCDC so as to inhibit Palmer from collecting on his judgment against the companies.

22

To the extent that the Williamses argue that they have a constitutional right to privacy with respect to their personal financial records, we note that the United States Supreme Court has held that there are no constitutional rights to privacy affected by disclosure of banking records or in personal financial records. *See United States v. Miller*, 425 U.S. 435, 442 (1976) (involving the subpoena of banking records served on a third-party); *Miller v. O'Neill*, 775 S.W.2d 56, 59 (Tex. App.–Houston [1st Dist.] 1989, no writ) (providing that despite the inevitable intrusion, discovery of financial records is permitted and is not an invasion of privacy); *see also In re Manion*, No. 07-08-00318-CV, 2008 Tex. App. LEXIS 6813, at **6-7 (Tex. App.–Amarillo, Sept. 11, 2008, no pet.). Financial statements and deposit slips contain information that is voluntarily conveyed to banks and exposed to bank employees in the ordinary course of business. *Miller*, 425 U.S. at 442. Likewise, checks are not confidential communications, but rather negotiable instruments used in commercial transactions. *Id.* Based on this authority, we find the Williamses' privacy argument to be in contravention of the governing policy consideration that the trial court does not abuse its discretion by ordering the production of personal financial documents that are relevant and material to prove net worth. *See Lunsford*, 746 S.W.2d at 473; *see also In re Brewer Leasing, Inc.*, 255 S.W.3d at 712; *In re Garth*, 214 S.W.3d at 194; *Delgado v. Kitzman*, 793 S.W.2d 332, 333 (Tex. App.–Houston [1st Dist.] 1990, orig. proceeding); *O'Neill*, 775 S.W.2d at 59. Accordingly, we find the Williamses privacy arguments to be without merit.

Regarding the Williamses argument that the trial court should have limited discovery to "the time the bond is set," *see Enviropower LLC v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 1, 5 (Tex. App.–Houston [1st Dist.] 2008, pet. denied), we once again note that Palmer alleges that representatives of SJW and PCDC transferred money from SJW and

PCDC over the course of several years in an effort to avoid paying the February 7, 2008 final judgment in favor of Palmer. Therefore, in order to prove that the affidavits depicting SJW and PCDC's net worth are incorrect and that the cash deposits in lieu of supersedeas bond are insufficient, Palmer must trace the purported transferring of assets to and from the companies that allegedly dates back to at least 2007. Given the circumstances of this case, we hold that Palmer's discovery requests spanning several years is relevant in proving Palmer's allegations that SJW and PCDC's net worth is inaccurate at the time the cash deposits in lieu of supersedeas bond were made because of the purported fraudulent transfers. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-.013 (Vernon 2009) (codifying the "Uniform Fraudulent Transfer Act").

Finally, we disagree with the Williamses' argument that the trial court abused its discretion by requiring them to produce documents and respond to interrogatories within an unreasonable amount of time. In support of their contention, the Williamses cite to Texas Rule of Civil Procedure 176.7, which states that "[i]n ruling on objections or motions for protection, the court must provide a person served with a subpoena an adequate time for compliance . . . ." TEX. R. CIV. P. 176.7. Here, Jay was not served with a subpoena to produce the information requested, and, as noted earlier, the record establishes that Jay is subject to the control of SJW and PCDC. Thus, Jay does not fall within the ambit of rule 176.7. *See id.* Jay does not cite any other authority to support this contention. The record reflects that Palmer served Jay with post-judgment discovery on January 27, 2009. The record also reflects that the trial court, after conducting a hearing on Palmer's motion to compel on July 22, 2009, ordered Jay to produce the requested information within twenty days of when the trial judge signed the order, which occurred on October 30, 2009. Jay has had ample time to produce the requested information. Furthermore, it is of no

24

consequence that Jay filed a motion for reconsideration of the trial court's October 30, 2009 order. Jay is not free to ignore the trial court's October 30, 2009 order simply because he filed an unsuccessful motion for reconsideration. Based on the foregoing, we conclude that the trial court's ordering of Jay to produce the requested information within twenty days of October 30, 2009, was not unreasonable; thus, the trial court did not abuse its discretion.

## V. CONCLUSION

In sum, we conclude that the trial court abused its discretion in ordering the Williamses to produce their personal income tax returns. On the other hand, we hold that the trial court did not abuse its discretion in ordering the Williamses to produce other personal financial information that Palmer requested. We LIFT our stay order of May 10, 2010, and conditionally grant the Williamses' petition for writ of mandamus as it pertains to the income tax returns. We deny their petition for writ of mandamus in all other respects. We are confident that the trial court will modify its October 30, 2009 and April 26, 2010 orders to reflect that Palmer has not proven himself entitled to the Williamses' personal income tax returns. The writ will issue only if the trial court fails to comply with this opinion.

_____
ROGELIO VALDEZ,
Chief Justice

Delivered and filed the
23rd day of September, 2010.

25