**Order filed December 1, 2016**



In The

# Fourteenth Court of Appeals

_____

NO. 14-12-00246-CV

_____

**HUNTER BUILDINGS & MANUFACTURING, L.P., HUNTER BUILDING, L.L.C., AND HUNTER BUILDINGS INTERNATIONAL, L.L.C., BBG GROUP, L.L.C., MILO NICKEL AND THOMAS MICHAEL LEBLANC, Appellants**

**V.**

**MBI GLOBAL, L.L.C., Appellee**

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-50193**

## ORDER

The court orders published the order on supersedeas issued in the above-referenced cause on April 30, 2013. Tex. R. App. P. 19.3(e).[1]

PER CURIAM

---

[1] A copy of the April 30, 2013 order is attached.

**Motion Granted in Part, Denied in Part, and Order filed April 30, 2013**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00246-CV

---

**HUNTER BUILDINGS & MANUFACTURING, L.P., HUNTER BUILDING, L.L.C., AND HUNTER BUILDINGS INTERNATIONAL, L.L.C., BBG GROUP, L.L.C., MILO NICKEL AND THOMAS MICHAEL LEBLANC, Appellants**

**V.**

**MBI GLOBAL, L.L.C., Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-50193**

---

## O R D E R

Appellants Hunter Buildings and Manufacturing, L.P., ("Manufacturing"), Hunter Buildings, L.L.C., ("Hunter"), and Hunter Buildings International ("International") moved for review of the trial court's net worth determination pursuant to Rule 24 of the Texas Rules of Appellate Procedure. Appellee MBI Global, L.L.C. filed a response and appellants replied. For the reasons stated

herein, we require that the amount of security necessary to supersede the trial court's judgment be decreased as set forth below. To this extent, we grant in part the Rule 24.4(a) motion filed by appellants; otherwise, we deny this motion. We lift our stay of execution on the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The trial court signed a judgment against six entities, jointly and severally, including Manufacturing, Hunter, and International. Appellants filed net worth affidavits and posted cash bonds. For Manufacturing, appellants posted a cash bond of $1,579,190 claiming a net worth of $2,864,743.25. For Hunter, appellants posted a cash bond of $100 claiming a negative net worth of $275,148.86. For International, appellants posted a cash bond of $100 claiming a negative net worth of $1,664,602.91. Appellee filed a contest and after discovery a hearing was conducted. The trial court found Hunter's net worth to be $9,997,810 and ordered additional security to be posted. The trial court did not state the net worth for Manufacturing or International.

In support of its order, the trial court made the following findings, in pertinent part:

6. Hunter Buildings LLC is the General Partner and in control of all Hunter related subsidiaries and affiliates as stipulated by the Defendants.

7. Under Generally Accepted Accounting Principles (GAAP), the net worth of Hunter Buildings LLC must be based upon the December 31, 2011 Consolidated Financial Statement of Hunter Buildings LLC in the amount of $9,997,810 because Hunter Buildings LLC controls all of the Hunter subsidiaries and affiliates. *See,* Plaintiff's Exhibit P-5. As a result of this control, consolidated statements are necessary for a fair presentation of net worth under GAAP rules as explained by experts for both Plaintiff and Defendants.

2

8. The Defendant's expert conceded that he did not have an opinion on the net worth under GAAP for either of Hunter Building and Manufacturing, LP or Hunter International, LLC as stand-alone entities, because neither he nor Hunter's independent accountants had been asked to make such a determination. Because the net worth balance sheets offered by the Defendants are not in compliance with GAAP, the Defendants have not met their burden of proof. The Defendants failed to produce evidence illustrating an accurate net worth under GAAP for Hunter Building Manufacturing, LP or Hunter International, LLC as stand-alone entities.

9. However, since the net worth of these subsidiaries is included in Hunter Buildings LLC according to the Consolidated Financial Statement, the Court finds no need to disturb the assertions in these affidavits.

10. Accordingly, the court finds the net worth of Hunter Buildings LLC is $9,997,810 and orders additional security to be posted in accordance with TRAP 24.2(c)(3).

## STANDARDS OF REVIEW

The trial court's determination of the net worth of a judgment debtor is reviewed under Rule 24.4 of the Texas Rules of Appellate Procedure using an abuse-of-discretion standard. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 910 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *See McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex. 1995). However, a trial court has no discretion in determining what the law is and applying the law to the facts. *See Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 623–24 (Tex. 2005). A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Id.*

3

ANALYSIS

From the trial court's order, appellants sought review in this Court. Appellants make three claims in their motion: (1) the trial court abused its discretion in finding that appellants failed to establish the net worth of Manufacturing and International as separate entities; (2) the trial court erred in determining Hunter's net worth; and (3) this Court should modify the judgment on joint and several liability. Issues one and two are intertwined as discussed below.

## A. The Separate Net Worth of Each Judgment Debtor and GAAP Rules

The trial court is required to set the net worth of each individual debtor. "In setting the amount of supersedeas security pending appeal, the trial court is required to consider the separate financial condition of each judgment debtor." *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836 (Tex. App.—Dallas 2006) (opinion on motion); *see also* Tex. R. App. P. 24.2(c) (when creditor contests a judgment debtor's net worth affidavit, court "must issue an order that states the debtor's net worth and states with particularity the factual basis for that determination").

The trial court concluded that Manufacturing and International failed to present evidence of their separate net worth because there were no audited financial statements for the individual companies and because the balance sheets[1] that the companies submitted were not "in compliance with GAAP." The trial court further determined the net worth of Hunter should be based on an audited consolidated financial statement for eight different entities.

The legal questions to be answered in this motion are: (1) whether the GAAP consolidation rule displaces case law indicating that each individual

---

[1] "**balance sheet**. (18c) A statement of an entity's current financial position, disclosing the value of the entity's assets, liabilities, and owners' equity." BLACK'S LAW DICTIONARY (9th ed. 2009).

4

company must be examined separately, and (2) whether net worth evidence must be in the form of a financial statement, certified by a CPA, that all requirements of GAAP have been met.

### 1. The consolidation rule

GAAP is short for "generally accepted accounting principles." The Financial Accounting Standards Board (FASB), a non-governmental body of the Securities and Exchange Commission, was charged with establishing standards of financial accounting that govern the preparation of financial reports.[2] FASB codified thousands of pronouncements comprising GAAP for the United States into a single source. The testifying experts both agreed that under these rules an accountant is required to create a consolidated financial statement[3] for these companies, rather than an individual statement per company.[4] The only audited financial statement admitted in evidence was therefore a consolidated financial statement. Appellants' expert, Saul Solomon, a certified public accountant (CPA), testified that it is only after a full audit that a CPA can testify that all requirements of GAAP have been met.

Appellee's expert, Dennis Arnie, testified that a consolidated financial statement is necessary for a fair presentation of Hunter's true financial situation. Arnie did not testify, however, that Hunter was the alter ego of the other entities. Arnie testified that it would be possible to do an individual net worth determination for Manufacturing and International but disagreed that it was possible to do one for Hunter.

---

[2] http://www.fasb.org/facts/

[3] *"consolidated financial statement.* The financial report of a company and all its subsidiaries combined as if they were a single entity." BLACK'S LAW DICTIONARY (9th ed. 2009).

[4] FASB Accounting Standards Codification (ASC) Topic 810.

Solomon testified the accounting literature relied upon by Arnie "deals with an auditor reporting on the parent company's financial statements. There is other literature that deals with reporting on subsidiary only information and that can be done and it's perfectly appropriate. . . . So, in other words, as an auditor, you can report on the net worth of any of these companies individually in accordance with GAAP, and that's perfectly fine." Solomon disagreed that "the whole process under GAAP is to fairly present . . . a company's net worth" and testified "[a]n audit is done to present the financial statements. There's a lot more information presented in a financial statement than net worth."[5]

We acknowledge that courts have generally stated that "net worth" is calculated as the difference between the party's total assets and total liabilities as determined by GAAP. *See Ramco Oil & Gas, Ltd. v Anglo Dutch (Tenge) L.L.C*, 171 S.W.3d 905, 914 (Tex. App.—Houston [14th Dist.] 2005) (order on motion). *See also In re Williams,* 328 S.W.3d 103, 110 (Tex. App.—Corpus Christi-Edinburg 2010, orig. proceeding); *Texas Custom Pools, Inc. v. Clatyon*, 293 S.W.3d 299, 305 (Tex. App.—El Paso 2009) (opinion on motion); *Enviropower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2008) (order); *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.). *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006) (order).

However, we hold that the GAAP consolidation rule does not displace the legal requirement that the net worth of each individual judgment debtor must be determined separately. There has been no finding of alter ego in this case, neither in the case-in-chief nor in the post-judgment net worth proceeding, and using the

---

[5] "**financial statement. 1.** A balance sheet, income statement, or annual report that summarizes an individual's or organization's financial condition on a specified date or for a specified period by reporting assets and liabilities." BLACK'S LAW DICTIONARY (9th ed. 2009).

GAAP consolidation rule would be impermissibly comingling all of the assets of all of the companies, as if there had been a finding of alter ego. *See In re Smith* 192 S.W.3d 564, 568-69 (Tex. 2006) (holding alter ego finding in a post-judgment net worth proceeding is relevant to the determination of a judgment debtor's net worth for the purposes of Rule 24 but may not be used to enforce the judgment against the unnamed alter ego or any other non-judgment debtor). Without an alter ego finding, it was error for the court to include all of the assets of the non-debtor affiliated companies in calculating the assets of Hunter.

## 2. An audited statement

No prior case has determined what "in compliance with generally accepted accounting principles" means in the definition of "net worth." Appellants argue it means that a statement of net worth offered in evidence must be audited and certified by a CPA as compliant with GAAP.[6] However, it could also mean that a party's assets and liabilities must be calculated using GAAP-approved methodology. In some prior cases a CPA did testify, but in other cases there was no indication that the person testifying was a CPA. *See LMC*, 220 S.W.3d at 485-486 (testimony of owner of the company and unaudited financial statement sufficient); *Ramco Oil*, 171 S.W.3d at 911 (testimony of Vice President of Finance as to assets for Ramco Oil, along with audited financials of parent company, sufficient to establish net worth).

We hold that a judgment debtor does not have to present audited net worth evidence with a certification from a CPA that all requirements of GAAP have been met in order to meet its burden of proving its net worth. An individual can prepare

---

[6] *But see* "**certified** *financial statement*. A **financial statement** examined and reported by an independent public or certified public accountant. SEC Rule 12b–2 (17 CFR § 240.12b–2)." Black's Law Dictionary (9th ed. 2009).

his own balance sheet and swear to his own net worth. *See* Tex. R. App. P. 24.2(c)(1). A bookkeeper, with knowledge of the financial records of the company, can also prepare and present a balance sheet by identifying the assets and liabilities of a company using GAAP principles and subtracting liabilities from assets to establish net worth. *See Business Staffing, Inc. v. Jackson Hot Oil Service,* No. 08-11-00092-CV, 2012 WL 1454027, \*4 (Tex. App.—El Paso 2012 (opinion on motion)*; Texas Custom Pools, Inc.,* 293 S.W.3d 314; *LMC Complete Automotive, Inc*., 229 S.W.3d 485-86; and *G.M. Houser, Inc.,* 204 S.W.3d at 838, 846.

### B. The Separate Net Worth of Manufacturing and International

With those principles in mind, we examine the evidence as to the separate net worth of Manufacturing and International. Appellants introduced balance sheets prepared by Lourdes Weneck, vice-president of finance at Manufacturing, that reflect a separate net worth for Hunter and each of its subsidiaries and affiliates. Manufacturing's "Combined Balance Sheet As of January 31, 2012 Post Audit Adjustment" reflects total assets of $8,385,552.01 and total liabilities of $5,675781.56, for a net worth of $2,709,770.50. The affidavit of appellants' expert, Saul Solomon, averred a net worth for Manufacturing of $2,864,743.25.[7] Within the audited consolidated financial statement, there are separate schedules that break out the assets and liabilities for each entity. The schedule attached to the audited consolidated financial statements reflected a net worth for Manufacturing of $2,804,287.

International's "Combined Balance Sheet As of January 31, 2012 Post Audit Adjustment" reflects total assets of $1,134,664.48 and total liabilities of

---

[7] The balance sheets reflect post-audit adjustments that were not available at the time Solomon prepared his affidavits.

$2,541,809.74, for a negative net worth of $1,407,145.30. Solomon's affidavit averred a negative net worth for International of $1,664,602.91. The schedule attached to the audited consolidated financial statement reflected a negative net worth for International of $1,424,218.

Weneck is not a CPA but has a degree in finance with thirty hours towards a Master's Degree in accounting. Weneck testified she keeps her books in accordance with generally accepted accounting principles, as guided by her accountants. Weneck gives her books and records, including the balance sheets, to the company accountants when they audit the companies. If they recommend any changes to her books and records, she makes them. Appellee objected to Weneck's testimony on the basis that she was not a certified public accountant and therefore not qualified to give an opinion about GAAP. The court did not rule on that objection. Weneck testified that you do not need to be a CPA to understand assets and liabilities or how to add and subtract to determine net worth. Weneck testified the balance sheets were produced in accordance with GAAP, but then testified on cross-examination as follows:

Q. But you can't testify to that, can you?

A. No, but they were produced that way.

Q. But you're not qualified to give that opinion, are you?

A. No.

Q. Okay. Now, you would agree that the consolidated statements, financial statements that were done by the independent auditors were done in accordance with GAAP, correct?

A. Yes.

Weneck also testified that each company files its own tax returns and has separate bank accounts. She testified that her books account for all intercompany transactions.

Saul Solomon testified, via affidavit, to the net worth of the appellants as outlined above, based on an earlier version of the balance sheets. He testified at the hearing that the net worth of the individual companies can be calculated using the audited consolidated financial statement because that statement also includes the audited balance sheets. Solomon testified that the auditors that compiled the consolidated financial statements would have audited each individual company's balance sheets and satisfied themselves that those were in accordance with GAAP. He further testified that they could have reported on each individual company's net worth but they were not asked to do so.

Solomon testified that he did not audit the financial statements. Only when he performs a full audit can he testify that all requirements of GAAP have been met. Solomon testified net worth is determined by the assets and liabilities and that is what a balance sheet presents. According to Solomon, "[t]he net worth is reflected in the audited financial statements of each individual company."

Arnie testified that it would be possible to do a separate net worth analysis for Manufacturing and International but that there is no separate GAAP audit on those entities. To create a separate statement would require the CPA to analyze all of the intercompany allocations. He disagreed with Solomon that the schedules attached to the audited financial statement are equivalent to an audited financial statement, under GAAP, for the individual entities.

We conclude that the balance sheets, affidavit testimony, and schedules demonstrate a separate net worth for International and Manufacturing. In *Ramco Oil & Gas, Ltd.,* 171 S.W.3d at 911-912, this Court held that uncontradicted

10

testimony conclusively proved net worth of a subsidiary as a matter of law, despite the fact that there was no audited financial statement of the subsidiary. In this case, similarly, appellee produced no evidence to discredit the balance sheet, the testimony, or the schedules other than to argue that there was not a separately audited number, certified as compliant under GAAP, for the different entities. We hold the trial court abused its discretion in concluding that the evidence presented was no evidence of a separate net worth. *See LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469 (Tex. App.—Houston [1st Dist.] 2007 ) (holding LMC's balance sheet from September 2006 constitutes evidence, as a matter of law, that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted)

Because the testimony was uncontroverted, we can set the bond for each individual company. We set the bond at $1,579,190 for Manufacturing.[8] Because International has a negative net worth, the previous bond of $100 is sufficient, and we set the bond at $100.

### C. The Separate Net Worth of Hunter

Appellants argue the trial court erred in determining the net worth of Hunter to be $9,997,810 based on the consolidated financial statements. In the consolidated financial statements, the assets and liabilities of eight different entities were consolidated under Hunter. However, each entity is a separate legal entity that files separate tax returns. Hunter is not a 100% owner of the other entities. And in fact there are outside owners for one of the entities—International.[9] Hunter

---

[8] Although the audited amount reflected a smaller net worth, Manufacturing has not asked us to change its current bond.

[9] The outside owners of International are also judgment debtors. They used International's negative net worth in their own net worth affidavits. Appellees did not challenge those net worth affidavits.

11

is the General Partner of Manufacturing but owns only 1% of its stock. Hunter owns 1% of Hunter Leasing L.P. ("Leasing").  It has no ownership interest in the other entities.

There was testimony that Hunter is in control of all Hunter-related subsidiaries and affiliates, and appellants stipulated that Hunter has control of the limited partners.  There was no finding that Hunter was the alter ego of the other eight entities. The trial court found that because Hunter controls its subsidiaries and affiliates, GAAP requires its net worth to incorporate the assets and liabilities of the entities under its control.  As discussed above, we hold that the trial court's decision on this question of law constituted an abuse of discretion.  Right to control is just one aspect of alter ego analysis, and without an alter ego finding the net worth of each individual judgment debtor must be considered.  *See SSP Partners v. Gladstrong Investments (USA) Corp*., 275 S.W. 3d 444, 455 (Tex. 2009) ("We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes and shared finances.").  The trial court erred in using the consolidated financial statement to determine Hunter's net worth.

Appellants introduced a balance sheet prepared by Weneck that reflects a separate net worth for Hunter.  Hunter's "Combined Balance Sheet As of January 31, 2012 Post Audit Adjustment" reflects total assets of a negative $256,987.02 and total liabilities of $14,455.00, for a net worth of negative $264,513.86. The balance sheet listed as assets for Hunter its 1% ownership interests in Manufacturing and in Leasing.   Solomon averred a negative net worth for Hunter of $275,148.86.[10]   The schedule attached to the audited consolidated financial statement reflected a negative net worth for Hunter of $274,414..

---

[10] The balance sheets reflect post-audit adjustments that were not available at the time Solomon prepared his affidavits.

There was no evidence controverting the assets and liabilities reflected on the balance sheet, in the Solomon affidavit, and in the schedule for Hunter. Because these sources reflect the total assets and liabilities of Hunter, they demonstrate Hunter's net worth.[11] Accordingly, we hold that the trial court abused its discretion by failing to correctly analyze the law and finding Hunter's net worth to be $9,997,810. Because the testimony was uncontroverted, we can set the bond for Hunter. We hold that Hunter's net worth is negative and that the bond of $100 that it previously filed is sufficient.

### *D. Modification of the Judgment*

We refuse appellants' request to modify the judgment to delete joint and several liability. Any error in the judgment is an issue to be addressed on appeal, not upon review of the amount of security. Accordingly, the motion is denied in part.

## CONCLUSION

After reviewing the record as a whole, we conclude appellants met their burden under Texas Rule of Appellate Procedure 24.2(c)(3) to establish as a matter of law that the net worth of Hunter, Manufacturing and International was as they set forth in their motions. We therefore reverse the trial court's order and order that the amount of bond, deposit or other security necessary to supersede the trial court's judgment be decreased to $100 for Hunter, set at $100 for International, and set at $1,579,190 for Manufacturing. To this extent, we grant in part appellants' Rule 24.4(a) motion; otherwise we deny this motion. Our order of January 7, 2013, staying execution of the judgment in trial court cause number

---

[11] We note the inclusion of Hunter's subsidiaries and affiliates would require Hunter to post bond based upon assets that cannot be reached to satisfy the judgment. *See SPS Partners*, 275 S.W.3d at 455.

13

2008-50193, styled *Hunter Buildings & Manufacturing, L.P., Hunter Building, L.L.C., and Hunter Buildings International, L.L.C., BBG Group, L.L.C., Milo Nickel and Thomas Michael LeBlanc v. MBI Global, L.L.C,* is vacated and our stay is lifted.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Jamison, and Busby.

14