In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-25-00111-CV**

**STILL AMERICAN, LLC, UNIO GLOBAL TRADE, LLC, ADOLFO RAFAEL VIVAS, MARCELA VOGEL, MICHAEL VOGEL, AND ADOLFO PEDRO VIVAS, Appellants**

**V.**

**BARON GLOBAL DISTRIBUTORS, LLC AND ZINC POINT MANUFACTURING, INC., Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-10-14637**

**MEMORANDUM OPINION ON MOTION**

Michael Vogel and Marcela Vogel (two of the Appellants in this appeal) filed a motion for review of the trial court's order regarding the amount of security required by them to supersede the judgment. We stayed enforcement of the judgment while we considered the motion. *See* Tex. R. App. P. 24.4(c). After completion of the underlying jury trial, the trial court entered an Amended Judgment awarding the

1

Appellees $12,361,628.84 in compensatory damages, plus prejudgment interest and costs.

All defendants filed a notice of appeal. Michael Vogel and Marcela Vogel each filed a net worth affidavit in the trial court and a supersedeas bond in the amount of $55,818.44, which they calculated to be one-half of each individual's net worth that they calculated to be $111,636.89. In the affidavits, each person states that their community assets total $655,474.66 and their community liabilities are $432,200,89. In each affidavit, the affiant also states, "The liability represented by the Final Judgment does, however, affect the value of a company in which we have a pecuniary interest, so it is included in the value of our ownership of that company."

Baron Global Distributors, LLC and Zinc Point Manufacturing, Inc. filed a Contest to the Vogels' net worth affidavits. The trial court held an evidentiary hearing on January 17, 2025, pertaining to the net worth affidavits and the setting of a supersedeas bond for the Vogels. Michael Vogel testified at the hearing that he prepared the spreadsheet he used for the net worth affidavits. Michael testified that he excluded from his net worth assets that would be exempt under Chapters 41 and 42 of the Texas Property Code, but he included as liabilities the mortgage on their homestead and the loan they owed on an exempt vehicle. Michael testified that they also owned a small rental property in Houston that they rented for $1,200 per month. He identified two motorcycles that he stated he assigned value to using the Kelley

Blue Book. Regarding the value of the ownership interest he and his wife hold in businesses, Michael testified that he and Marcela each own a 15 percent interest in Unio Global Trade, but because of the outstanding judgment in this case they considered their shares to have zero value. Michael stated he had "a rough idea[]" that in August 2024 they had about "$179,000 and some change[]" in their brokerage account, to the "best of [his] recollection" they have about $11,000 in their personal checking account, "[r]oughly maybe" $5,000 in another checking account, and "maybe some -- less than $10,000, likely[]" in a third checking account.

In calculating their liabilities, Michael testified that he included quarterly estimated tax payments of their income from their businesses. He testified he also included his personal liability as guarantor of the Unio Global building lease and the lease on his daughter's college apartment for the upcoming year. Michael testified that all their assets and liabilities are community and none of them are separate.

The trial court questioned Michael further to gain more clarity on the value of the Vogels' assets and liabilities. Michael admitted he lacked an exact recollection of how much cash they had in August 2024, but he said, "the total might have been somewhere around 600,000 or 500,000." One motorcycle was worth about $5,000 and the other about $6,000. Michael believed the rental house might be valued at "120-something."

3

The trial court pressed the witness further on the zero value they placed on their ownership of Unio Global Trade, noting that in lieu of a supersedeas bond the company had made a cash deposit of $649,130.27 into the registry of the court in November 2024, and considering it is a pass-through entity, the Vogels' 30 percent interest should be worth more than zero. Michael responded that "by the time we signed the affidavit, if I recall correctly, it was around $1.2 million." Pressed on what Unio Global Trade owns, Michael testified that Unio owns two forklifts and a bank account that at the time of the hearing had on deposit about $133,000 in cash. According to Michael, another company they own, Vogel Marketing, had no customers in August 2024 and at the time of the hearing it only had some "odd work here and there."

On redirect, Michael testified that if they sold their residence today, he would put it on the market for "[m]aybe somewhere around $600,000." The trial court noted that the Vogels' spreadsheet calculation had excluded any value of their residence in Montgomery County, Texas from their assets, but then they had included their mortgage payment on that residence in their liabilities, and the Vogels had given no value in their assets for multiple vehicles such as a 2023 Toyota Corolla and a 2023 Tesla Model Y worth about $53,000, and a BMW motorcycle worth about $12,000, because their attorney told them those assets were exempt.

4

In response to a question from his counsel regarding the effect of possibly posting an additional $110,000 bond between Marcela and Michael, Michael replied, "we would have to liquidate assets to be able to cover that," such as the brokerage account and the motorcycles. He explained that after posting the supersedeas bonds, paying tax liabilities, and college expenses, and considering they had legal expenses, "it would probably be seriously detrimental." Vogel's counsel then passed the witness.

The trial court stated on the record that the Vogels had provided no evidence regarding liabilities other than the existence of a car note, a mortgage, and educational expenses. The trial court concluded that it could not make a reasoned decision regarding net worth without information about the assets and liabilities that had not been provided, and Vogel's testimony that they "would have to liquidate assets" did not show substantial economic harm for purposes of section 52.006(c) of the Civil Practice and Remedies Code.

On January 20, 2025, the trial court entered an Order Setting Supersedeas Bond and found that the Vogels' Net Worth affidavits failed to contain the required "complete, detailed information concerning the debtor's assets and liabilities f[ro]m which net worth can be ascertained," that the affidavits were conclusory comments as to both assets and liabilities, and neither affidavit is "prima facie evidence of the debtor's net worth[.]" The trial court stated in the Order that based on the evidence

the Court received, the Vogels "were not truthful in their affidavits[.]" The trial court found, "[t]he burden was on the Vogels—they failed to provide sufficient information from which the Court may determine their net worth." The trial court explained that it therefore set the amount of the bond in the default amount dictated under Rule 24.2(a)(1).

The trial court set the amount of the bond required of Michael Vogel to supersede the judgment during the appeal as $14,463,105.74, and the amount of the bond required of Marcela Vogel to supersede the judgment during the appeal as $14,463,105.74. The trial court calculated the amount of the bonds by adding compensatory damages of $12,361,628.84, two years of interest in the amount of $2,101,476.90, and no costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a).

In its order, the trial court found the Vogels failed to establish the value of several of their assets, including the value of their ownership interest in Unio Global Trade, LLC and the value of a rental property they own. The trial court ruled they failed to show that use of the statutory formula to set the supersedeas bond would cause them to suffer substantial economic harm. The trial court found Michael Vogel and Marcela Vogel were not truthful in their affidavits, "given that even as to the incomplete list of assets about which he testified, Michael Vogel's live-in-court assessment of their total community property assets is $2,379,400.00." Referring to

6

the extent of his direct knowledge of their assets and liabilities, during the hearing Michael admitted, "I may be leaving a couple out."

On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of security. *See* Tex. R. App. P. 24.4(a)(1). We review the trial court's determination of the amount of security for an abuse of discretion. *See Hunter Bldgs. & Mfg., L.P. v. MBI Global, L.L.C.*, 514 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2013, op. on motion); *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909-10 (Tex. App.—Houston [14th Dist.] 2005, op. on motion), *disp. on merits*, 207 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *See McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995). The trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *See In re Smith*, 192 S.W.3d 564, 570 (Tex. 2006) (orig. proceeding) (per curiam); *Ramco*, 171 S.W.3d at 910.

If we conclude the trial court abused its discretion by setting an excessive bond amount, we may order the amount of the security decreased to the amount required by section 52.006(b) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006; Tex. R. App. P. 24.4(a)(1). Our review requires a two-step analysis: (1) consider whether the trial court had sufficient

information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Montelongo v. Exit Stage Left, Inc.*, 293 S.W.3d 294, 297 (Tex. App.—El Paso 2009, op. on motion [mand. denied]), *dismissed due to settlement*, *Montelongo v. Cisnero*s, No. 08-08-00324-CV, 2010 Tex. App. LEXIS 7729 (Tex. App.—El Paso Sept. 22, 2010, no pet.).

The Vogels argue the issue before us is solely a matter of statutory construction of section 52.006 of the Civil Practice and Remedies Code, which they argue we review do novo. They contend the trial court erred by requiring the Vogels to include their homestead and other exempt property in their net worth calculations. They argue they should not be required to include those assets, since none of those assets are subject to seizure to satisfy debts. Thus, they argue exempt property must be excluded from the calculation performed pursuant to section 52.006(a)-(b).

"Net worth" is not defined in Chapter 52 of the Civil Practice and Remedies Code, but the term is generally used to describe the difference between total assets and total liabilities determined in accordance with generally accepted accounting principles. *See Ramco*, 171 S.W.3d at 913-15. Indeed, the Vogels' affidavits state their understanding is that the term "refers to the difference between my total assets and current total liabilities[.]"

The Vogels provide no case authority for their argument that a trial court must exclude exempt assets from the calculations under section 52.006(a)-(b). For most

8

individual judgment debtors, some property may indeed be exempt from execution, but that does not mean equity that a person holds in what may otherwise be assets that are exempt from execution should be excluded from the determination of net worth for purposes of calculating a supersedeas bond. They ask this Court to construe section 52.006(a)-(b) to exclude exempt assets from the calculation of a judgment debtor's net worth. Their rationale is that if exempt property is included in net worth for purposes of calculating the bond required under section 52.006(a)-(b), they might be required to post a bond in an amount greater than the value of their non-exempt assets that would be available to satisfy the judgment. Under such a scenario, they contend, a judgment debtor would be forced either to forego supersedeas or to sell, transfer, or encumber exempt assets to post the supersedeas bond, thereby converting exempt assets into non-exempt assets. We note that the Vogels elected to include the mortgage payments and note payments on their homestead and certain notes in their liability column and included nothing of the value of those assets in the asset column. Further, we conclude the record here simply does not support their argument. We reject the Vogels' suggested construction of section 52.006.

The Vogels had the burden to prove their net worth. *See* Tex. R. App. P. 24.2(c)(3). Therefore, to show the trial court abused its discretion based on the legally insufficient evidence, the judgment debtor must show the evidence

conclusively establishes, as a matter of law, all vital facts in support of their position. *See Ramco*, 171 S.W.3d at 910. We must bear in mind that the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.*

The Vogels argue that their net worth affidavits were uncontroverted, but the plaintiffs challenged the affidavits, and the trial court held an evidentiary hearing and was the sole judge of the credibility of the witness. Considered in the light most favorable to the trial court's findings, the evidence shows the evidence offered by Vogel was at best incomplete and inconsistent. Vogel acknowledged various omissions in his testimony, including a failure to attribute any value to ownership in or transactions with entities appellants controlled and his calculations were based on conclusory assumptions. *See Tex. Black Iron, Inc. v. N. Am. Interpipe, Inc.*, No. 14-20-00068-CV, 2020 Tex. App. LEXIS 5861, at **18-19 (Tex. App.—Houston [14th Dist.] July 28, 2020, mem. op. on motion) (concluding that incomplete, inaccurate, and misleading financial statements were insufficient to support appellants' stated net worth as a matter of law). On this record, the trial court could reasonably conclude that the testimony provided by Vogel lacked credibility.

The Vogels also suggest this Court should consider the documents they offered into evidence at the hearing in our review of the Order Setting Supersedeas Bond, but the trial court excluded the exhibits after sustaining hearsay objections,

and the Vogels have not challenged the evidentiary rulings in their Motion for Review. Citing *Natural Gas Pipeline Co. v. Justiss*, the Vogels argue that Michael Vogel is entitled to opine on his assets and liabilities, so long as that opinion is based on his perception and the opinion is helpful to determining a fact in issue. *See* 397 S.W.3d 150, 157 (Tex. 2012). The record shows the trial court allowed Vogel to testify as to his opinion regarding the value of his assets and the amount of his liabilities. The trial court found his testimony to be untrustworthy and insufficient to establish net worth.

"In determining whether the Judgment Debtors have shown that the trial court abused its discretion as to these issues by ruling based on factually insufficient evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding." *Ramco*, 171 S.W.3d at 910. "After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id*.

We conclude the evidence is legally and factually sufficient to support the trial court's findings that appellants did not satisfy their burden to prove their net worth and that, from the evidence presented, the trial court was unable to determine their net worth. The evidence does not conclusively establish, as a matter of law, all vital

facts in support of appellants' contention they met their burden to prove net worth. *See Tex. Black Iron, Inc.*, 2020 Tex. App. LEXIS 5861, at *20.

Here the trial court was unable to determine a specific net worth amount from the evidence, and the trial court then set the bond in the default amount dictated by Rule 24.2(a)(1) including the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. The trial court did not abuse its discretion in setting the amount of the supersedeas. *See id.* at *20; *Ruff v. Ruff*, No. 05-18-00326-CV, 2018 Tex. App. LEXIS 4155, at **12-13 (Tex. App.—Dallas June 8, 2018 [mand. denied]) (mem. op. on motion); *Newsome v. N. Tex. Neuroscience Ctr., P.A.*, No. 08-09-00025-CV, 2009 Tex. App. LEXIS 8628, at *15 (Tex. App.—El Paso Nov. 9, 2009, mem. op. on motion), *disp. on merits*, 2021 Tex. App. LEXIS 10230 (Tex. App.—El Paso Dec. 30, 2021) (mem. op.).

For the reasons we have explained above, we deny Appellants' motion and affirm the trial court's Order setting the supersedeas and we vacate our April 26, 2025 Order staying execution of the judgment, and lift our stay.

ORDER AFFIRMED.

PER CURIAM

Submitted on May 14, 2025
Opinion delivered May 15, 2025

Before Golemon, C.J., Johnson and Wright, JJ.

12